1
2
3
4
5
6
7

8                          **UNITED STATES DISTRICT COURT**
9                          **SOUTHERN DISTRICT OF CALIFORNIA**

10    ISMAEL ORTEGA, KRISINDA            Case No. 3:20-cv-0879-LAB-NLS
      WOLFE, DORIS WILLIAMS-
11    JENKINS, and LILIA SILVA,          **ORDER GRANTING:**
12    individuals, on behalf of
      themselves and all persons         1) **MOTION FOR FINAL**
13    similarly situated,                   **APPROVAL OF CLASS**
                                            **SETTLEMENT [Dkt. 33]; and**
14
                    Plaintiffs,          2) **MOTION FOR ATTORNEY**
15                                          **FEES, COSTS, AND SERVICE**
      v.                                    **AWARDS [Dkt. 32]**
16
      LOYAL SOURCE
17    GOVERNMENT SERVICES
18    LLC, a Limited Liability
      Company; and Does 1 through
19    50, Inclusive,
20
                    Defendants.
21

22

23         Plaintiffs Ismael Ortega, Krisinda Wolfe, Doris Williams-Jenkins and
24   Lilia Silva ("Plaintiffs"), were employees of Defendant Loyal Source
25   Government Services LLC ("Defendant"). They filed this putative class
26   action against Defendant asserting wage and hour claims and claims for
27   failure to make proper disclosures under the Fair Credit Reporting Act.
28   They now move for final approval of the class settlement (the "Settlement")

with Defendant and of payments to the Class, the Plaintiffs, Class Counsel, and the Settlement Administrator. (Dkt. 32; Dkt. 33).

The Court has considered:

- Plaintiffs' briefing in support of the Motion for Final Approval of Class Settlement (the "Final Approval Motion") (Dkt. 33);
- Plaintiffs' briefing in support of the Motion for Attorneys' Fees, Costs, and Service Awards (the "Fee Motion") (Dkt. 32);
- The Supplemental Declaration of Kyle Nordrehaug in support of the Fee Motion (Dk;
- The Supplemental Declaration of Kyle Nordrehaug in support of the Motion for Final Approval (Dkt. 41);
- The declarations and exhibits submitted in support of each Motion and the Settlement;
- The Class Action Settlement Agreement (Dkt. 33-2 Ex. 2);
- The First Amended Class Action Settlement Agreement (the "Agreement", Dkt. 41 Ex. 1);
- The entire record in this proceeding, including but not limited to the briefing, declarations, and exhibits submitted in support of preliminary approval of the Settlement in its various iterations, including:
  - o The Notice Plan for providing full and fair notice to the Class;
  - o The lack of any Class Member objections to the Settlement;
  - o The absence of any objection or response by any official after the provision of all notices required by the Class Action Fairness Act of 2005, 28 U.S.C. § 1715; and
  - o Counsel's oral presentations at the two hearings on the

2

Settlement's fairness;

- This Court's experiences, observations, and file developed in presiding over resolution of this matter; and
- The relevant law.

Based upon these considerations and the Court's findings of fact and conclusions of law as set forth in the Preliminary Approval Order and as discussed below, **IT IS ORDERED:**

1) Final Approval of the Settlement, the terms of which are set forth in the Agreement, is **GRANTED**;

2) The Settlement Class is **CERTIFIED**;

3) Plaintiffs Ismael Ortega, Krisinda Wolfe, Doris Williams-Jenkins and Lilia Silva are appointed as Class Representatives and the incentive awards requested in the Fee Motion are **APPROVED**;

4) The payments to Claims Administrator KCC, LLC requested in the Fee Motion are **APPROVED**;

5) Blumenthal Nordrehaug Bhowmik De Blouw LLP is appointed as Class Counsel and the attorneys' fees requested in the Fee Motion are **APPROVED**;

6) Plaintiffs' claims are **DISMISSED WITH PREJUDICE** in accordance with the terms of this Order.

## DISCUSSION

### I.    Definitions

Except as otherwise specified herein, the Court for purposes of this Final Approval Order adopts all defined terms set forth in the Agreement.

### II.    Jurisdiction

The Court has subject matter jurisdiction over this action, including jurisdiction over all claims alleged in the action, settlement of those claims on a class-wide basis, all claims released by the Settlement, and any

3

1  objections submitted to the Settlement pursuant to 28 U.S.C. §§ 1132(a)

2  and (d).

3       The Court also has personal jurisdiction over the parties. As

4  discussed in greater detail below and in the Court's Preliminary Approval

5  Order, the Class Members received adequate notice, had the right to opt

6  out, and were adequately represented by Plaintiffs. Accordingly, the Court

7  can and does exercise jurisdiction over those Class Members' claims. *See*

8  *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 811–12 (1986) (adequate

9  notice and opportunity to be heard permits courts to exercise jurisdiction

10 over claims of absent class members).

11      **III.    Findings and Conclusions**

12            **A. Definition of Class and Class Members**

13      The Court adopts the Preliminary Approval Order's definitions of the

14 "California Class," comprised of the "California Class Members," and the

15 "FCRA Class," comprised of the "FCRA Class Members." Those class

16 definitions are reproduced below:

17      • The California Class is defined as all individuals who worked

18        for Defendant in California as non-exempt employees during

19        the California Class Period. The "California Class Period" is

20        February 14, 2016 to September 29, 2020.

21      • The FCRA Class is defined as all employees or prospective

22        employees of Defendant in the United States for whom

23        Defendant procured a background check during the FCRA

24        Class Period. The "FCRA Class Period" is February 14, 2018

25        to September 29, 2020.

26      The Court excludes from the Classes individuals who requested such

27 an exclusion. Those individuals are listed in Exhibit C to the Declaration of

28 Bernella Osterlund submitted in support of the motion. (Dkt. 34 at 28).

4

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## B. Definition of Class and Class Members

Before approving a settlement of class claims, the Court must confirm that the class form is appropriate to the case. Rule 23(a) requires a class to satisfy four prerequisites, generally referred to as numerosity, commonality, typicality, and adequacy of representation. If these are satisfied, the Court must confirm that the action meets one of the class action types enumerated in Rule 23(b)—as relevant here, subsection (3) of that Rule requires that the common questions predominate over individual ones and that a class action be superior to other available methods for fairly and efficiently adjudicating the controversy. Because each of these requirements is met as discussed below, the Court grants final certification of the Class. All Class Members are subject to this Order.

### 1. Numerosity

The proposed Classes each include over 750 members. This is sufficiently numerous that joinder of all members is impracticable, so Rule 23's numerosity requirement is satisfied. Fed. R. Civ. P. 23(a)(1).

### 2. Commonality

A properly certified class must also have questions of law or fact common to the class members. Fed. R. Civ. P. 23(a)(2). Each proposed Class satisfies this requirement. The FCRA Class's claims depend on a question regarding the sufficiency of the disclosures contained in the consent form Defendant provided to each FCRA Class Member. The California Class's claims relate to Defendant's generally applicable policies relating to overtime pay, wages, meal and rest periods, wage statements, and cell phone reimbursement.

### 3. Typicality

A class can be certified only if the class representative's claims are typical of the class's claims. Fed. R. Civ. P. 23(a)(3). A representative's

claims are typical "if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Hanlon v. Chrysler Co.*, 150 F.3d 1011, 1020 (9th Cir. 1998), *overruled on other grounds by Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011). Each Plaintiff was allegedly subject to the employment policies that form the basis of the California Class's claims, and each Plaintiff allegedly received and signed the consent form that forms the basis of the FCRA class's claims. The Court finds that Plaintiffs' claims are reasonably co-extensive with those of the other Class Members.

### 4. Adequacy of Class Representatives

The next prerequisite to class certification, adequacy of representation, "serves to uncover conflicts of interest between named parties and the class they seek to represent." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997); Fed. R. Civ. P. 23(a)(4). No party or objector contends that the Classes lack adequate representation, and Class Counsel has fully and competently prosecuted all claims available to the Classes. Plaintiffs, who are each members of both Classes, possess no apparent interests adverse to those Classes. Class Counsel and the named Plaintiffs are adequate to represent the Classes.

### 5. The Classes Meet the Requirements of Rule 23(b)(3)

Having met Rule 23(a)'s prerequisites for class certification, Plaintiffs contend that each Class can be certified under Fed. R. Civ. P. 23(b)(3). (*See* Dkt. 27-1 at 19). This requires the Court to find that questions of law or fact common to Class Members predominate over any questions affecting only individual members and that class treatment is the superior means to adjudicate plaintiffs' claims. Fed. R. Civ. P. 23(b)(3). These requirements are satisfied as to each Class.

Predominance can be established by the existence of a company-

1    wide policy or practice. *See, e.g., Duque v. Bank of America*, Case No. SA

2    CV 18-1298 PA (MRWx), 2018 WL 10483813 at \*3-4 (C.D. Cal. Dec. 10,

3    2018). Here, Plaintiffs' claims arise from Defendant's allegedly uniform and

4    systematic employment policies applicable to non-exempt employees, for

5    the California Class, and to background checks, for the FCRA Class. The

6    common questions surrounding these policies predominate this case, and

7    so the predominance requirement is met.

8       The Court must also confirm that the class form is superior to other

9    methods of litigation before certifying a class under Rule 23(b)(3). This

10    inquiry "requires determination of whether the objectives of the particular

11    class action procedure will be achieved in the particular case." *Hanlon*, 150

12    F.3d at 1023. The "dominant[]" objective of the class form is "vindication of

13    the rights of groups of people who individually would be without effective

14    strength to bring their opponents into court at all. . . . The policy at the very

15    core of the class action mechanism is to overcome the problem that small

16    recoveries do not provide the incentive for any individual to bring a solo

17    action prosecuting his or her rights." *Amchem Prods., Inc. v. Windsor*, 521

18    U.S. 591, 617 (1997) (cleaned up). Counsel in this case estimates the

19    California Class's damages at $4,184,920.36, or $6,073.90 per member of

20    that 689-person class. The FCRA Class's claims permit recovery of

21    statutory damages of $100 to $1,000 per willful violation, plus the costs and

22    reasonable fees incurred in prosecuting the action. 15 U.S.C.

23    § 1681n(a)(1). The Court finds that these amounts are sufficiently small

24    that individual Class Members wouldn't have a sufficient incentive to bring

25    individual actions, so the superiority requirement is satisfied.

26       With the requirements of Rules 23(a) and b(3) satisfied, the Court

27    grants final certification of the California Class and the FCRA Class for

28    settlement purposes only.

7

1

### IV.    The Settlement

2        "Federal Rule of Civil Procedure 23(e) requires district courts to
3 review proposed class action settlements for fairness, reasonableness,
4 and adequacy." *Roes, 1–2 v. SFBSC Management, LLC*, 944 F.3d 1035,
5 1048 (9th Cir. 2019). Because the named plaintiffs, class counsel, and
6 defense counsel may have incentives inconsistent with the interests of
7 absent class members, the Court must take care to protect the due process
8 rights of those absent class members. And because this incongruity is most
9 pronounced where the settlement comes prior to class certification,
10 "settlement approval requires a higher standard of fairness and a more
11 probing inquiry than may normally be required under Rule 23(e)." *Id.* at
12 1048-49 (internal marks and citation omitted). The Court must look
13 particularly for evidence of collusion or other conflicts of interest to protect
14 absent class members. *Id.*

15        Applying this standard, the Court finds that the Settlement is fair,
16 reasonable, and adequate to each Class, in light of the complexity,
17 expense, and likely duration of the litigation (including appellate
18 proceedings), as well as the risks involved in establishing liability,
19 damages, and the appropriateness of class treatment through trial and
20 appeal. *See Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 963 (9th Cir.
21 2009). The Settlement appears to be the result of arm's-length negotiation
22 and the record doesn't support a conclusion that the Settlement is the result
23 of either: 1) collusion among Plaintiffs, Class Counsel, and Defendants; or
24 2) conflicts of interest between Plaintiffs and Class Counsel, on the one
25 hand, and the Class Members, on the other.

26        ### A. Generally

27        Under the terms of the Agreement, Defendant will pay a total of
28 $2,750,000. After subtracting attorneys' fees and costs, administration

1  costs, Plaintiffs' service awards, the Private Attorneys General Act (PAGA)

2  payment, 41% of the remaining common fund will be paid to members of

3  the FCRA Class and 59% will be paid to members of the California Class.

4  ### B. The Settlement Affords Meaningful Relief

5  Accounting for the fees, costs, service awards, and PAGA payment

6  provided for in this Order, the FCRA Class will receive $786,955, or

7  $114.83 per class member. The California Class will receive $1,132,448:

8  $1,435.30 per class member or $37.16 for each week that a class member

9  worked during the period. Each FCRA Class member's recovery amounts

10  to 114% of the statutory minimum recovery, a reasonable amount in

11  settlement. The California Class's recovery is 27% of the damages

12  estimated by Plaintiffs' expert.

13  On the other side of the ledger and as described in further detail *infra*,

14  Section VIII, participating class members will release the claims actually

15  brought and claims that could have been brought under federal or state law

16  arising out of the allegations of the operative complaint and that accrued

17  on or before January 29, 2021. The plaintiffs themselves will release all

18  "claims, transactions or occurrences between them [and Defendant or its

19  affiliated entities or individuals] that occurred during the Class Period." (Dkt.

20  33-2 at 54). And aggrieved employees will release claims for civil penalties

21  that were or could have been asserted under Cal. Labor Code § 2699 and

22  that accrued on or before January 29, 2021.

23  The Court finds the releases reasonable in scope and, in light of the

24  risks, costs, and duration of continued litigation, the amounts paid to

25  Plaintiffs and the Classes fair, reasonable, and adequate consideration for

26  those releases.

27  ### C. No Collusion or Conflicts of Interest

28  The Court finds no evidence to support a conclusion that Plaintiffs

1  and the Defendant colluded. To the contrary, up to and through the

2  Settlement, both Parties vigorously litigated and negotiated this action, as

3  evidenced by the docket.

4  However, the Agreement's "clear sailing" provision, under which

5  Defendants agreed not to contest any request for fees exceeding 25% of

6  the Settlement funds, can be a "subtle sign of collusion." *SFBSC*

7  *Management*, 944 F.3d at 1049. The presence of such a provision requires

8  the Court to look closely at the reasonableness of the recovery and the

9  reasonableness of fees to confirm that Class Counsel haven't negotiated a

10  benefit for themselves using the Class's claims as leverage. *Id.*

11  That scrutiny doesn't reveal evidence that Class Counsel bargained

12  away a Class benefit in exchange for clear sailing on an unreasonably large

13  fee award. The Settlement's benefit to the Class is appropriate in relation

14  to the likelihood of success at trial and the magnitude of the Class claims.

15  Class Counsel's requested fees withstand close scrutiny, too. They seek

16  25% of the total—equal to the Ninth Circuit's benchmark rate and less than

17  the maximum the clear sailing agreement allows without objection. These

18  fees are reasonable. And while the Court finds that the maximum fees

19  allowable under the clear sailing provision would be too high, that amount

20  isn't so extraordinary that the Court can infer that Class Counsel obtained

21  the provision by bargaining away a class benefit.

22  Because it's unlikely that the clear sailing agreement provided a non-

23  negligible benefit to Class Counsel, and because the Class benefit from the

24  Settlement is adequate, the Settlement withstands close scrutiny and the

25  Court finds no apparent collusion.

26  **D. Response of the Classes**

27  The Classes' responses after full, fair, and effective notice (as

28  discussed below) favor final approval of the Settlement. Out of the

1  estimated 7,733 who received notice,[1] none filed an objection to the

2  Settlement and only nine Class Members—one from the California Class

3  and eight from the FCRA Class—requested exclusion.

4  **V.    Notice**

5      Pursuant to the Preliminary Approval Order, the Notice of Pendency

6  of Class Action Settlement and Hearing Date for Court Approval ("Class

7  Notice") was sent to 7,642 Class Members by mail. KCC sent emails to an

8  additional 137 members of the FCRA Class for whom no mailing address

9  was available—91 of these were successfully contacted. The Class Notice

10 informed Class Members of the terms of the Settlement, their right to

11 receive a Settlement Share, their right to comment on or object to the

12 Settlement and/or the attorneys' fees and costs, their right to elect not to

13 participate in the Settlement and pursue their own remedies, and their right

14 to appear in person or by counsel at the final approval hearing and be heard

15 regarding approval of the Settlement. Adequate periods of time were

16 provided by each of these procedures.

17     This notice procedure afforded adequate protections to Class

18 Members and provides the basis for the Court to make an informed

19 decision regarding approval of the settlement based on the responses of

20 Class Members. The Class Notice provided in this case was the best notice

21 practicable, satisfying the requirements of law and due process.

22 **VI.    PAGA Payment**

23     The PAGA payment of $30,000, with $22,500 going to the California

24 Labor and Workforce Development Agency and $7,500 to be distributed

25 among the subset of the California Class that worked for Defendant during

26 the PAGA Period, is approved. That payment must be distributed as set

27

28 ---
[1] This number includes 7,642 who received notice via mail and 91 who were successfully contacted via email.

11

1  forth in the Agreement. Upon entry of this order and judgment, Plaintiffs,
2  individually, and in their capacity as a private attorney generals for, and
3  proxies or agents of, the California Labor and Workforce Development
4  Agency ("LWDA"), and the LWDA, as the real party in interest, will
5  irrevocably release, acquit, and forever discharge Defendant of all claims
6  for civil penalties asserted or which could have been asserted under
7  California Labor Code § 2699, based on the facts and claims alleged in the
8  operative complaints filed in the Action, which have accrued at any time
9  from the beginning of the PAGA Period through January 29, 2021 with
10 respect to the Aggrieved Employees, and, expressly excluding all other
11 claims, including claims for wrongful termination, unemployment insurance,
12 disability, social security, and workers' compensation, and claims outside
13 of the applicable PAGA Period.

14 **VII.   Costs and Fees**

15     The fees and expenses of KCC, LLC in administrating the settlement,
16 in the amount of $70,000, are fair and reasonable. The Court hereby grants
17 final approval to and orders that the payment of that amount be paid out of
18 the Gross Settlement Amount in accordance with the Agreement.

19     The requested Class Representative Service Payments and
20 attorneys' fees and costs are fair and reasonable. The Court hereby grants
21 final approval to and orders that the payment of the amounts of $5,000 to
22 each of the four Plaintiffs for their Class Representative Service Payments,
23 $687,500.00 for attorneys' fees to Class Counsel, and $23,097.30 for
24 reimbursement of costs be paid out of the Gross Settlement Amount in
25 accordance with the Settlement.

26 **VIII.   Release**

27     Upon entry of final judgment, Class Members will fully release and
28 forever discharge Defendants and the Released Parties of liability for all

1  claims that were or reasonably could have been alleged based on the facts

2  in the operative complaint which occurred during the Class Period,

3  including any claims related to background checks and any claims arising

4  under the FCRA, CCRAA, ICCRAA, and expressly excluding all other

5  claims, including claims for Labor Code violations, wrongful termination,

6  unemployment insurance, disability, social security, and workers'

7  compensation, and claims outside of the Class Period (collectively, the

8  "Released Claims").

9       Upon entry of final judgment, Plaintiffs will also fully and finally

10  release Defendants and the Released Parties from Plaintiffs' Released

11  Claims.

12       The Plaintiffs also fully and finally release Defendant and the other

13  Released Parties from Plaintiffs' Released Claims.

14       Nothing in this order shall preclude any action to enforce the Parties'

15  obligations under the Settlement or under this order, including the

16  requirement that Defendant make payment in accordance with the

17  Agreement.

18       If, for any reason, the Effective Date (as defined by the Settlement)

19  does not occur, this Order will be vacated; the Parties will return to their

20  respective positions in this action as those positions existed immediately

21  before the Parties executed the Agreement; and nothing stated in the

22  Agreement or any other papers filed with this Court in connection with the

23  Settlement will be deemed an admission of any kind by any of the Parties

24  or used as evidence against, or over the objection of, any of the Parties for

25  any purpose in this action or in any other action.

26       The Parties represent that they entered into the Settlement solely for

27  the purpose of compromising and settling disputed claims. Defendant

28  expressly denies any violation of law or any liability whatsoever to Plaintiffs

1 | and/or the Class, individually or collectively.

2 | **CONCLUSION**

3 | The Settlement is ordered finally approved, and that all terms and
4 | provisions of the Settlement are ordered to be consummated. Participating
5 | Class Members will be bound by the Settlement. The Parties are hereby
6 | ordered to comply with the terms of the Agreement.

7 | The action is **DISMISSED WITH PREJUDICE**, and final judgment is
8 | entered. Each side will bear its own costs and attorneys' fees except as
9 | provided by the Settlement and this Order.

10 | The parties have consented to the continued jurisdiction of United
11 | States Magistrate Judge Nita L. Stormes or any Magistrate Judge who may
12 | later be assigned over all matters relating to the interpretation,
13 | administration, implementation, effectuation and enforcement of this order
14 | and the Settlement.

15 | The Clerk is directed to close the case.

16 | **IT IS SO ORDERED.**

17 | Dated:  February 7, 2022

18 | Hon. Larry Alan Burns
19 | United States District Judge

14